269.  ATLANTIC COAST LINE RAILROAD CO. v. HARRIS.

The value or market price of an article may be shown by direct or circumstantial evidence, or both.

Petition for certiorari, from Ware superior court—Judge Parker.  November 16, 1906.

Submitted April 8,—Decided April 25, 1907.

*Bennet & Conyers, Simon W. Hitch,* for plaintiff in error.

RUSSELL, J.  The plaintiff in error excepts to the refusal of the judge of the superior court to sanction a petition for certiorari. In the petition presented to the judge, the verdict of a jury in a justice's court, and the judgment thereon, are excepted to upon the ground that the verdict is not sustained by the evidence as to the market price, or value, of certain cottonseed, alleged to have been lost by the carrier.  The plaintiff in the justice's court brought a suit for three bushels of Egyptian cottonseed, delivered by him to the defendant company at Waycross, to be shipped to Campville, Florida.  The sole assignment of error relates to the value of the cottonseed in question.  That is to say, did the plaintiff sufficiently prove the value of the seed to be five dollars a bushel, so as to entitle him to the verdict he received.  The plaintiff testified that on March 1, 1906, he delivered a sack of Egyptian cottonseed, containing three bushels, to the defendant.  He was to get $5 a bushel for these seed.  When the consignee did not receive the seed he sent him three other bushels, by express, for which he received $15.  He further testified that he did not know what Egyptian cottonseed were worth in the market. These seed were selected, the best bolls from the best stalks.  A witness for the plaintiff testified that the plaintiff brought a few Egyptian cottonseed from Texas four years ago, which he planted, and therefrom raised a number of seed, and that he (witness) bought some seed from him at the rate of $1,000 a bushel.  The next year witness and plaintiff raised this Egyptian cotton again, and they agreed to fix the price at $10 a bushel, and last year at $5 per bushel.  This year the witness was sick and lost his crop, and the plaintiff raised none.  This witness testified further, that this cotton was raised by several persons in the vicinity, and the seed are on the market at Waycross.  Witness did not know what the

seed were worth on the market. Witness and plaintiff fixed the price of theirs at $5 per bushel. He did not know what kind of seed Mr. Hardy or others had for sale at $1.50 per bushel. The Egyptian cotton is a prolific cotton, producing two bales per acre.

The defendant introduced a witness who testified that he sold Egyptian cottonseed, grown from seed bought from plaintiff, from the first of the year and during the planting season. He kept a good quality of the seed on hand and never sold it for more than $1.50 per bushel. The market price of Harris's Egyptian cottonseed on March 1, 1906, was $1.50 per bushel. He further testified that the seed he sold were raised last year and were ginned on the same gin as plaintiff's seed. The defendant objected to the testimony of the plaintiff in regard to selecting the seed, and moved to rule it out, upon the ground that it was not shown in the bill of lading or in plaintiff's suit that these seed were selected, but it simply appeared that they were Egyptian cottonseed; and in the petition for certiorari excepts to the decision of the trial court which overruled the objection and denied the motion to withdraw the evidence from the jury. As neither the bill of lading nor the summons is exhibited by brief or otherwise in the record, we are unable to pass upon this exception; for the reason that we have no information as to their contents, verified by the court. Neither could the judge of the superior court consider this exception; for the reason that there was nothing to show what the bill of lading contained, or the contents of the plaintiff's suit. The only reference made to the subject in the petition for certiorari is the statement of the grounds of the defendant's objection.

Coming then to the exception to be considered, to wit, that the only direct evidence of market price fixed the value of the seed at $1.50 a bushel, and that a value of $5 a bushel was not shown, the general rule is, that the value of a well-known article is determined by the market price. And we confess that the question involved in this case is not perfectly free from doubt, as both witnesses for the plaintiff testified that they did not know the market price, and the only witness who did testify that he knew the market price fixed the value at $1.50 per bushel. The market price of an article, when expressed by a witness, is, however, at last, but the opinion of that witness, derived from his knowledge of actual sales,

sometimes few in number and sometimes multitudinous. If the jury accept the opinion of such witness, they fix their opinion by his opinion. The statement of a witness of the price at which he sold or valued a particular article is not the proper manner of proving the value of that article. Nor is the fact that he would not be willing to sell for a less amount than a certain figure proof that the article is worth the price at which he holds it for sale; but, as value is essentially a matter of opinion, so far as the jury is concerned, to be derived by them from the evidence, each of the several facts produced in evidence by the plaintiff might be considered by the jury, for the purpose of enabling them to form, as they must do at last, their own opinion as to the value of the cottonseed in question. The fact testified to by the plaintiff, that he was to get $5 a bushel for these seed, and did get $5 a bushel for those he sent to replace them, the fact that the plaintiff and his witness bound themselves to fix the price of their seed at $5, the fact that they sold them for $10 in 1904, and $1,000 per bushel in 1903, and finally the fact that these special seed were selected or picked so as to secure the very best (if the jury believe selection would procure a better quality), may authorize the jury legally to come to the conclusion, in forming their opinion of value and fixing their verdict, that the seed in question were worth $5 per bushel. If we are right in this opinion, that the jury can derive the value of an article from various circumstances, no one of which alone would be sufficient to prove it, but would be indicative thereof, and which, all taken together, could establish a legitimate opinion, then the verdict of the jury was authorized, and the judge of the superior court was right in refusing to interfere with it. And while, if we had been upon the jury, we might have preferred the testimony for the defendant, as being more satisfactory on the issue of value, still, if the evidence for the plaintiff, under any rule of law, is sufficient to prove the value contended for by him, the jury's right of selection must not be interfered with. The principle which controls us in sustaining the verdict of the jury upon this evidence is not new in our jurisprudence. In *Southwestern R. Co.* v. *Rowan,* 43 *Ga.* 415, the Supreme Court, referring to the case of *Southwestern R. Co.* v. *Bryan,* 41 *Ga.* 71, recognizes the difference between articles having a market value and articles having no fixed market value, and says that, "though there may be

evidence before the jury, not exactly legitimate, yet there was also plenty of evidence to furnish the jury with data for a proper calculation." And that was a suit to recover damages for the difference between the agreed value and the market value of sawed lumber, which, as the court properly remarked, has a distinct market value in almost every community, and therein differs from crossties, "an article the market value of which it is almost impossible to fix, since there is, ordinarily, but one purchaser in a community."

*Judgment affirmed.*